

40 Broad Street, 7th Floor
New York, New York 10004
Telephone: 212.943.9080
www.vandallp.com

**Kara S. Miller**
Senior Associate
kmiller@vandallp.com

July 23, 2018

**VIA ECF**
Honorable Lorna G. Schofield
United States District Judge
United States District Court for the Southern District of New York
40 Foley Square
New York, New York 10007

      Re:   *Parra et. al. v. DNA Contracting LLC. et. al.*
             **Case No.: 17-CV-2755 (LGS)**

Dear Judge Schofield:

    We represent Named Plaintiffs Gerardo Parra and Francisco Emilio Baez, and opt-in Plaintiff Anselmo Ollan Zapata (collectively "Plaintiffs") in the above-referenced action. This joint letter is respectfully submitted by all parties for approval of the negotiated Settlement Agreement (attached hereto as Exhibit A1). For the reasons set forth below, the parties represent that the Settlement Agreement is fair and reasonable and is in accordance with the standard set forth by the Second Circuit in *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015).

    **A.**   **Procedural Background**

    This action was commenced on April 17, 2017 to recover alleged unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and New York State Labor Laws ("NYLL") and damages for Defendants' failure to provide proper wage notices and pay stubs to Plaintiffs who performed construction work for Defendants DNA Contracting LLC and DNA Contracting & Waterproofing, LLC (collectively "DNA" or "Defendants")[2] [Docket No. 1.] Plaintiffs filed their First Amended Complaint on May 18, 2017. [Docket No. 12.] Plaintiffs filed their Second Amended Complaint on June 29, 2017. [Docket No. 23.] Plaintiffs' motion for conditional certification pursuant to 29 U.S.C. § 216(b) was granted on January 5, 2018. [Docket No. 77.] Two individuals opted-in to the action. Through the diligent efforts of Plaintiffs' counsel, Plaintiffs have

---

[1] Opt-in Plaintiff Zapata was unable to execute the Settlement Agreement by today's date. An updated fully executed Settlement Agreement will be filed as soon as possible.
[2] Defendant DNA Construction Corp. did not appear in this action and the corporation is no longer operational.



recovered a significant amount of their allegedly unpaid wages.

### B. The Settlement Agreement is Fair and Reasonable

Plaintiffs seek final approval of the Settlement Agreement reached in this case, pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 2015 U.S. App. LEXIS 13815 (2d Cir. Aug. 7, 2015) (holding that, "the FLSA falls within the 'applicable federal statute' exception under Rule 41" and therefore, "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."). The Court in *Cheeks* recognized that requiring the approval of the district court or the DOL is consistent with the purposes of the FLSA, including its primary remedial purpose of "prevent[ing] abuses by unscrupulous employers, and remedy[ing] the disparate bargaining power between employers and employees." *Id.* at *20. As set forth in further detail below, and in accordance with *Wolinksy v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012), the parties are in agreement that this settlement is fair, reasonable, consistent with the underlying purposes of the FLSA, and is the product of equal bargaining.

As articulated in *Wolinksy*, when assessing the fairness of a settlement, a court should consider the totality of circumstances including but not limited to several factors such as: (1) the range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement "is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinksy*, 900 F. Supp. 2d at 335 (quoting *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214, 2010 U.S. Dist. LEXIS 75098 (S.D.N.Y. July 23, 2010)). Based on an analysis of these factors, the parties are confident that the negotiation process was conducted at arm's length and should pass this Court's scrutiny.

Defendants deny that Plaintiffs were employed by them and instead argue that Plaintiffs were employed exclusively by subcontractors. As a result, Defendants lacked any payroll records for Plaintiffs. Plaintiffs relied exclusively on their own documents, recollections, and averages to comprise approximate damage calculations.

Plaintiff Gerardo Parra alleges to have worked for DNA from approximately May to September of 2015. Plaintiff Parra's most recent rate of pay was $21.00 per hour. Plaintiff Parra maintained a calendar containing the hours that he worked. Based on this calendar, Plaintiff Parra worked 111 overtime hours for which he alleges he was not paid the overtime premium, resulting in unpaid wages of $1,165.50. With liquidated damages at 100%, along with $10,000.00 statutory damages for not receiving proper paystubs, this amount totaled $12,331.00.

Plaintiff Baez alleges to have worked for DNA from approximately April of 2014 to October of 2016. Plaintiff Baez typically worked 6 days each week for 9 hours each day, but worked fewer hours, or none at all, during January and February of 2015 and January of 2016. Plaintiff Baez's most recent rate of pay was $18.00 per hour. Plaintiff Baez alleges he is owed the overtime premium for his overtime hours, resulting in unpaid wages of $6,588.00. With liquidated

3



damages at 100%, along with $10,000.00 statutory damages for not receiving proper paystubs, this amount totaled $23,176.00.

Opt-in Plaintiff Zapata alleges to have worked for DNA from approximately June of 2012 to October of 2015. Plaintiff Zapata typically worked 6 days each week for 9 hours each day. Plaintiff Zapata's most recent rate of pay was $13.00 per hour. Plaintiff Zapata alleges he is owed the overtime premium for his overtime hours, resulting in unpaid wages of $4,433.00. With liquidated damages at 100%, along with $10,000.00 statutory damages for not receiving proper paystubs, this amount totaled $18,866.00.

A fiercely contested issue between the parties was whether Defendants were Plaintiffs' employers, liable for their unpaid overtime wages. Defendants allege that they are general contractors who did not directly employ the Plaintiffs. This issue would have involved significant motion practice and presented a real risk to Plaintiffs, resulting in no recovery in the event they lost on this issue. Part of the settlement reached between the parties was an attempt to resolve this issue.

The ultimate amounts being received by Plaintiffs pursuant to the Settlement Agreement are as follows:

| Gerardo Parra | $3.500.00 |
| --- | --- |
| Francisco Emilio Baez | $8,500.00 |
| Anselmno Ollan Zapata | $1,500.00 |

Plaintiffs Parra and Baez are therefore each receiving 100% of their allegedly unpaid FLSA overtime wages, plus a percentage of their liquidated damages and paystub damages. Plaintiff Zapata is receiving a moderate lump sum payment. Given that he alleges to have worked for Defendants beginning in 2012, he can unfortunately no longer recall as many details about his work and would have a harder time proving his case at trial. These challenges were built in to his settlement value.

During the parties' settlement negotiations, an issue arose with respect to former Opt-in Plaintiff Miguel Bailon. Plaintiffs' counsel has not been able to get in contact with him despite repeated attempts for weeks, including by phone and mail. As a result, Plaintiffs' counsel has agreed to withdraw Mr. Bailon as an Opt-in Plaintiff as part of the settlement agreement. None of his rights are being impacted by his withdrawal, which is being done without prejudice.

The Settlement Agreement was only reached after considerable negotiations between the parties. In light of the fact that the Named Plaintiffs are receiving 100% of their FLSA damage and a portion of liquidated damages and notice damages, and the unique circumstances for Opt-in Plaintiff Zapata, the parties submit that the settlement is a fair result and should be approved. *See*

4



*e.g. Meigel v. Flowers of the World, NYC, Inc.*, 2012 U.S. Dist. LEXIS 2359, at *2-3, 11 Civ. 465 (KBF) (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.") (internal citations omitted).

### C. Plaintiffs' Counsel Is Entitled to Reasonable Attorneys' Fees and Costs

After settlement awards were negotiated for the Plaintiffs, the parties then engaged in settlement negotiations regarding attorneys' fees and costs for Plaintiffs' counsel. As set forth in the Settlement Agreement, Plaintiffs' counsel seeks attorneys' fees and costs in the amount of $9,500, which has been agreed to by Defendants and Plaintiffs as reasonable.

Plaintiffs' Counsel zealously litigated this case, including the successful negotiation of a settlement on behalf of Plaintiffs, and is thus entitled to reasonable attorneys' fees and costs expended as a result of litigating this action. As stated by the 2nd Circuit in *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. N.Y. 1994):

> This court declines to second guess experienced counsel in deciding whether the hours devoted to research, drafting, interviewing, and consulting were necessary. To engage in such detailed hour by hour review is to demean counsel's stature as officers of the court and I have no intention of substituting my after-the-fact judgment for that of counsel who engaged in whatever research and other activities they felt necessary.

The standard for awarding attorneys' fees and costs is one of reasonableness. "Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge." *Husain v. Springer*, No. 97 CV 2982 (NG) (CLP), 2013 U.S. Dist. LEXIS 37134, 15-16 (E.D.N.Y. 2013) (citing *Perdue v. Kenny A.*, 559 U.S. 542, 130 S.Ct. 1662, 1676 (2010)). In considering an application for attorneys' fees and costs, the Second Circuit determines a "presumptively reasonable fee" which is "the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany¸* 522 F.3d 182, 190 (2d Cir. 2008). The presumptively reasonable fee is determined by reference to the number of hours reasonably expended on the litigation multiplied by the reasonable fee to be charged for those hours. *See generally Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009). In calculating this fee, courts generally consider the prevailing market rate for similar services by lawyers of "reasonably comparable skill, experience and reputation." *Cho v. Koam Medical Services, P.C.*, 524 F. Supp. 2d 202, 206 (E.D.N.Y. Nov. 30, 2007); *see also Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (holding that courts should use the hourly rates employed in the district where the case is heard).

Here, Plaintiffs' Counsel met and communicated regularly with the Plaintiffs, drafted and filed pleadings, successfully opposed Defendants' motion to dismiss, drafted Rule 26 initial disclosures, drafted and served document and interrogatory demands, responded to document and



interrogatory demands on behalf of all Plaintiffs, filed a motion to conditionally certify the collective which was successful over Defendants' opposition, distributed the FLSA notice using bank records and payments obtained by third-party subpoena and published the FLSA notice in Spanish language newspapers, performed considerable legal research, drafted all settlement related documents, including the Settlement Agreement and present motion, and reviewed the Settlement Agreement with Plaintiffs in their native language. [See Exhibit B, V&A's Contemporaneous Billing Statement.] In particular, Plaintiff's Counsel expended extraordinary resources through the use of subpoenas to attempt to locate members of the putative collective and class and to support Plaintiffs' allegations that Defendants were their true employers. Plaintiffs subpoenaed bank records and construction records from numerous third-parties and reviewed thousands of documents. These efforts were necessary in light of Defendants' claim that it did not employ these individuals, and therefore produced no records that could be used to locate other members of the collective and putative class to inform them about this lawsuit. Many of these workers are recent immigrants whose first language is not English. While Plaintiffs only had limited success in this area, with two individuals filing consent to join forms, these efforts were substantial and greatly added to V&A's costs and fees.

In performing these tasks, Plaintiffs' Counsel expended approximately 440.3 hours of attorney, paralegal, and staff member time – an aggregate lodestar of $115,195.00. [See Exhibit B.] These hours are reasonable and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case. Moreover, Plaintiffs' Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk.

Plaintiffs' Counsel also expended $2,968.33 in out-of-pocket expenses. [See Exhibit B.] "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal citation and quotation marks omitted). Here, Plaintiffs' Counsel incurred actual expenses for costs such as court and process server fees, mailing expenses, newspaper publication expenses, and subpoena costs. [See Exhibit B.] These expenses were incidental and necessary to the representation of Plaintiffs.

Plaintiffs' attorneys have submitted an itemized compilation of their time and expense records for the Court's consideration on this motion. [See Exhibit B.] Although attorneys' fees and costs exceed $118,163.33, Plaintiffs' Counsel is limiting its request for approval to only $9,500.00 in attorneys' fees and costs, as negotiated between the parties, constituting only 8% of counsel's lodestar and costs. Plaintiffs' Counsel is accepting this substantially reduced request in the interest of the Plaintiffs, to effectuate the settlement they desired, as well as the unique circumstances of this action.



### D. Plaintiffs' Counsel's Hourly Rates Are Reasonable in Light of Their Qualifications

Plaintiffs' Counsel utilized reasonable hourly rates in the prosecution of this action. "The 'presumptively reasonable fee' for an attorney's work is what a reasonable client would be willing to pay for that work." *Husain*, No. 97 CV 2982 (NG) (CLP), 2013 U.S. Dist. LEXIS 37134 at 16 (*quoting Arbor Hill*, 522 F.3d 182, at 190).

The vast majority of V&A's clients are low wage hourly workers without the means to pay for legal services. Numerous courts have determined what a reasonable client would pay for V&A to represent them in a wage and hour action if such a client had sufficient means, including when challenged by opposing counsel. *See e.g. Perez et al. v. AC Roosevelt Food Corp. et al.* (EDNY 10-cv-4824) (in contested fee application, Judge Gleeson approving hourly rates of $525.00 for partner Lloyd Ambinder, $395.00 for associate Kara Miller, and $125.00 for paralegals); *Kalloo v. Unlimited Mech. Co. of NY*, 977 F. Supp. 2d 209 (E.D.N.Y. 2013) (in contested fee application after successful bench trial, Judge Gershon approving Plaintiffs' Counsel's voluntarily reduced billing rates of $495.00 for partners, $325.00 for associates including Kara Miller, and $100.00 for paralegals); *Paguay v. Barbasso, Inc.*, (S.D.N.Y. 11-CV-6266) (in contested fee application after successful jury trial, Judge Caproni approving $525.00 for Lloyd Ambinder, $365.00 for senior associates, $200.00 for junior associates, and $125.00 for paralegals "[i]n light of Virginia & Ambinder's extensive experience litigating wage and hour claims and the successful outcome achieved for their client); *McBeth, et al. v. Gabrelli Truck Sales Ltd., et al.* (E.D.N.Y. 09-cv-4112) (Judge Wexler approving hourly rates of partners at $495.00 per hour, of counsel at $425.00 per hour, associates at $325 to $395 per hour, and paralegals at $95.00 to $150.00 per hour ); *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 130 (S.D.N.Y. 2011) (Judge Shira A. Scheindlin approving partners at $550 per hour, associates at $395.00 per hour, and paralegals at $125.00 per hour); *Garcia et al. v. The Executive Club* (S.D.N.Y. 10-cv-1545) (Judge Stein approving same hourly wage rates); *Sandoval et al. v. Galaxy Gen. Contr. Corp., et al.*, No. 10-cv-5771 (S.D.N.Y. Aug. 23, 2013) (Judge Gardephe approving same); *Aparicio v. Iguana New York LTD*. (SDNY 11-cv-1830) (Judge Pauley approving partners at $550 per hour, associates at up to $425 per hour, and paralegals at $125 per hour).

I am a 2005 graduate of Vassar College and 2008 graduate of Boston University School of Law. Prior to joining V&A, I was a labor and employment litigator at Morgan, Lewis, & Bockius in New York City. I have extensive employment experience representing employees in wage and hour actions. My advocacy work for nail salon employees has been featured in the New York Times and I have also served as a consultant to New York Governor Cuomo's office on legislative reforms for nail salon workers. I also serve on the board as employment counsel for several non-profit projects to assist cancer patients affiliated with Memorial Sloan Kettering. I also serve as V&A trial counsel. I billed at a rate of $425.00 per hour and I am often referred to as "KM" on billing records.



Named Partner Lloyd Ambinder is a 1989 graduate of Brooklyn Law School and has exclusively practiced as an attorney in litigation of wage and hour claims, having litigated in excess of 500 wage & hour cases, on behalf of at least 20,000 workers, including numerous high-profile class actions that have been reported in the New York Daily News, the New York Post and the New Jersey Star Ledger. Mr. Ambinder have also argued a number of first impression cases which have had a lasting influence on employment law in New York and New Jersey. Mr. Ambinder has been a panelist at symposiums sponsored by the National Alliance For Fair Contracting, the National Conference of Unions and Employee Benefit Funds, the New York County Lawyer's Association, and the Nassau County Bar Association, where he lectured on public contracting and labor law, class actions, and prevailing wage and overtime law. Mr. Ambinder is rated as an "AV Preeminent Attorney" by Martindale Hubbell for Ethical Standards and Legal Ability. Mr. Ambinder bills at a rate of $525.00 per hour and is often referred to as "LRA" or "LA" on billing records.

Leonor Coyle is a 2006 graduate of Fordham University School of Law. Ms. Coyle joined V&A in 2009. Ms. Coyle is fluent in Spanish and regularly speaks about employment issues facing immigrant populations at the Mexican, Guatemalan, Ecuadoran, El Salvadoran, and Honduras consulates. Prior to joining V&A, Leonor worked as an Assistant District Attorney for the Suffolk County District Attorney's Office. She has extensive courtroom experience, and has tried numerous bench and jury trials. Ms. Coyle bills at a rate of $425.00 per hour and is often referred to as "LC" on billing records.

Alanna Sakovits is a 2016 graduate of the City University of New York School of Law, and joined V&A as an associate in August 2016, after previously serving as a law clerk at V&A from May 2015 through April 2016. Ms. Sakovits' primary practice area is wage and hour litigation. Ms. Sakovits billed at a rate of $250 per hour and is often referred to as "AS" on billing records.

V&A paralegals and support staff bill out at a rate of $125.00 per hour.

That other courts have already approved similar rates is an important factor for a court to consider. *See Asare v. Change Group N.Y., Inc.*, 2013 U.S. Dist. LEXIS 165935, 49-51 (S.D.N.Y. Nov. 15, 2013) (approving requested rates in part because other courts within the Second Circuit had approved these hourly rates). Counsel's rates are also on par with other highly specialized employment attorneys. *See Id.* (Judge McMahon approving rates of $750 per hour for partner time; $300 to $500 per hour for associates and $150 per hour for paralegal/staff time); *Willix v. HeathFirst Inc.*, 2011 U.S. Dist. LEXIS 21102, at *15-17 (E.D.N.Y. Feb. 18, 2011) (approving rates of $740 per hour for partners and $400 per hour for associates where counsel "are well-versed in wage and hour law…."); *See Trs. of the Local 807 Labor Management Health Fund v. M&M Bldg. Prods.*, 2010 U.S. Dist. LEXIS 31467 (E.D.N.Y. Mar. 17, 2010) (approving $125 per hour for paralegal work).



     V&A has substantial experience prosecuting wage and hour actions, and has represented thousands of workers to recover unpaid wages.[3] V&A's highly specialized employment practice and esteemed reputation in the community warrants their hourly rates. Many of the wage and hour cases litigated by V&A have resulted in seminal decisions that are routinely cited by courts throughout the country. For example, V&A represented plaintiffs in *Guzman v. VLM, Inc.*, 2007 U.S. Dist. LEXIS 75817 (E.D.N.Y. October 11, 2007) and 2008 U.S. Dist. LEXIS 15821 (E.D.N.Y. Mar. 2, 2008). This seminal decision pertaining to collective and class certification in wage and hour cases has been cited by courts in the Second Circuit in over 75 published opinions, as well as district courts in the First, Third, Fourth, Fifth, Seventh, Eight, and Tenth Circuits. V&A has also argued other first impression cases which have had a strong influence on employment law in New York and New Jersey. *See Cox v. Nap Construction Company, Inc.*, Index No. 11179/03 (Sup. Ct. N.Y. Co. 2004) (Cahn, J.), *aff'd*, 10 N.Y.3d 592 (2008); *De La Cruz v. Caddell Dry Dock & Repair Co., Inc.*, 21 N.Y.3d 530 (2013).

     Numerous courts have commented on V&A's vast experience as employment litigators, and efficient representation. *See Dabrowski v. Abax Inc.*, 84 A.D.3d 633, 634, 923 N.Y.S.2d 505 (N.Y. App. Div. 2011) (observing that Plaintiffs' Counsel "has demonstrated its expertise and zealous representation of the plaintiffs here, as well as in prior class action cases which have reached this court on appeal"); *Morris v. Alle Processing Corp.*, 2013 U.S. Dist. LEXIS 64534,

---

3 *See Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 129-130 (S.D.N.Y. 2011) (Scheindlin, J.); *Lujan v. Cabana Management, Inc.*, Index No. 10-cv-755 (E.D.N.Y. Feb. 1 2011) (Block, J.); *Zepeda et al. v. Franari Produce Distributors Inc., et al.*, (EDNY 10-cv-2588) (Bianco, J.); *Kopacz, et al. v. St. Paul Fire and Marine Insurance Co., et al.*, Index No.: 111154-2008 (Sup.Ct.N.Y.Co. 2011); *Dabrowski v. ABAX Inc.*, 2010 84 A.D.3d 633 (N.Y. App. Div. 1st Dep't 2011); *Cardona v. The Maramont Corporation*, 2009 NY Slip Op 32695U (Sup.Ct.N.Y.Co. Nov. 12, 2009); *Kudinov v. Kel-Tech Construction Inc.,* 65 A.D.3d 481 *(1st Dept.* 2009); *Morris v. Alle Processing, Corp.*, Docket No. 08-CV-4874 (E.D.N.Y. Dec. 22, 2009); *Nawrocki v. Crimson Construction*, Docket No. 08-CV-3153 (E.D.N.Y. June 17, 2009); *Cox v. Nap Construction Company, Inc.*, Index No. 11179/03 (Sup. Ct. N.Y. Co. 2004) (Cahn, J.), aff'd, 10 N.Y.3d 592 (2008); *Galdamez v. Biordi Constr. Corp.*, 13 Misc. 3d 1224A (Sup.Ct.N.Y.Co. June 8 2006), *aff'd* 50 A.D.3d 357 (Apr. 8, 2008); *Gonzalez v. Nicholas Zito Racing Stable, Inc.*, 2008 U.S. Dist. LEXIS 27598 (E.D.N.Y. Mar. 31, 2008); *Guzman v. VLM, Inc.*, 2008 U.S. Dist. LEXIS 15821 (S.D.N.Y. Mar. 2, 2008); *Pajaczek v. Cema Constr. Corp.* 2008 NY Slip Op 50386U (Sup.Ct.N.Y.Co. Feb. 21, 2008); *De La Cruz v. Caddell Dry Dock & Repair Co., Inc.*, Index No.: 26220-2002 (Sup.Ct. Bronx.Co. Jan. 9, 2007); *Brandy v. Canea Mare Construction, Inc.,* 4 A.D.3d 512 (2nd Dept. 2006); *Wysocki v. Kel-Tech Construction, Inc.*, Index No.: 603591-2003 (Sup.Ct.N.Y.Co. Sept. 26, 2005); *Velez v. Majik Cleaning Serv.*, 2005 U.S. Dist. LEXIS 709 (S.D.N.Y. Jan. 19, 2005); *Alfaro v. Vardaris Tech, Inc.*, 69 A.D.3d 436 (1st Dept. 2010); *Barone v. Safway Steel Products, Inc.*, 2005 WL 2009882 (E.D.N.Y. 2005); *Brunson v. City of New York*, 94 Civ. 4507 (S.D.N.Y.); *Andrejuk v. National Environmental Safety Co. Inc.*, 94 Civ. 4638 (S.D.N.Y.); *Pesantez v. Boyle Environmental Services, Inc.*, Index No. 128988/93 (Sup. Ct. N.Y. Co. 1998) (Cahn, J.), *aff'd* 251 A.D.2d 11, 673 N.Y.S.2d 659 (1st Dept. 1998).



34-35 (E.D.N.Y. May 6, 2013) ("With respect to the qualifications and experience of plaintiffs' counsel, Virginia and Ambinder LLP, the Court finds that they are experienced labor and employment litigators who have successfully represented employees in numerous wage and hour class and collective action lawsuits."); *Garcia v. Exec. Club LLC*, 2012 U.S. Dist. LEXIS 189823 (S.D.N.Y. May 10, 2012) ("Class Counsel have experience prosecuting and settling employment class actions, including wage and hour class actions and are well-versed in wage and hour law and in class action law."); *Montenegro v. Gita Properties, LLC*, Docket No.12-CV-01669 (BMC) (E.D.N.Y. Sept. 9, 2012) (Judge Cogan commending Plaintiffs' Counsel for the "professional and efficient manner in which they handled the case….").[4]

In light of the above, it is respectfully requested that this Court grant approval of the Settlement Agreement and award Plaintiffs' Counsel attorneys' fees and costs in the amount of $9,500.00.

Respectfully Submitted,

/s/ Kara S. Miller, Esq.

Cc: Gina Nicotera, Esq. (counsel for Defendants)

---

[4] The *Montenegro* action was handled by V&A *pro bono* along with Make the Road New York. Judge Cogan noted that "plaintiff's attorneys have the special recognition of the Court for taking on this difficult matter on a *pro bono* basis. We need more lawyers like the ones I saw in this case." *Id*.